# FRANCES I. CAPEN v. GARRISON et al., Appellants.

### Division One, February 22, 1906.

1. **EQUITY: General Principles.** Equity violates no law and does not assume to make a contract for the parties; it follows the law and upholds it, and when it comes to the relief of one to whom the law cannot afford adequate remedy, it does not in so doing infringe the law or impair its force, nor does it reconstruct the contract between the parties.

2. ———: **Subrogation.** Subrogation may result as the direct legal effect of a contract, as where a purchaser on agreed terms purchases a subsisting mortgage; or it may be imported into the transaction by equity where the contract is silent on the subject, yet is raised by equity as an implied part of the transaction and as manifesting the intention of the parties under the conditions surrounding it. But equity will not engraft subrogation on to the transaction if the conditions arising from the performance of the contract show that the parties did not intend that subrogation should result and the contract itself negatives the idea of subrogation and to imply it would be inconsistent with the contract.

3. ———: ———: **When Implied.** If subrogation is not inconsistent with the contract or in violation of any one's legal rights and if justice demands it, equity will imply it, though the parties may never have thought of it. But equity will not imply it if the contract forbids it.

4. ———: ———: **Usual Application.** Subrogation is usually applied where a person at the request of a debtor pays the mortgage debt, or where one interested in the property pays an incumbrance to protect his own interest, or where he stands in the relation of surety to the debt.

5. ———: ———: **Curator's Mortgage: Payment of Pre-existent Mortgage: Directed by Probate Court: Mistake.** The law does not authorize the curator to mortgage his minor ward's estate to pay a pre-existing incumbrance, and if he borrows money and gives a mortgage thereon to secure the loan and uses the money so borrowed to pay off a subsisting mortgage left on the property by the minor's deceased ancestor, the mortgagee in the curator's mortgage is not subrogated to the rights of the mort-

gagee in the other, the evidence clearly showing that the lender did not rely on the old mortgage. And the fact that both parties thought that the curator's mortgage, fortified by an order of the probate court directing him to borrow money to pay off the preceding mortgage and thereby prevent the foreclosure of that mortgage, was valid, does not alter the case. In that they were mistaken, but, though mutual, it was a mistake of law.

6. CURATOR'S MORTGAGE: Meaning of Statute. The exprespression in the statute authorizing the minor's estate to be mortgaged for his education and maintenance is an exclusion of the curator's right to mortgage it for any other purpose.

7. ———: ———: Necessity. A curator's mortgage cannot be upheld on the ground that it was necessary to mortgage the minor's estate in order to save it to him from sale under a pre-existing incumbrance. Nor can the court say that it is to his interest to replace a matured mortgage by a three-year mortgage.

8. ———: Equitable Lien. The lender is not entitled to an equitable lien on the minor's property for money advanced by him to the curator to pay off a mortgage placed upon the property by the minor's ancestor. There is no legal obligation on the minor to pay the pre-existing debt, and therefore there is no foundation upon which to build an equitable lien. Nor will a court of equity aid the curator to do by indirection what he is by statute forbidden to do directly. He cannot indirectly by an equitable lien or directly by a mortgage incumber his minor ward's land for the purpose of obtaining money wherewith to pay an encumbrance placed thereon by the minor's ancestor.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy*, Judge.

REVERSED AND REMANDED (*with directions*).

*T. Percy Carr* for appellants.

(1) The only purpose for which the statute authorizes a curator to mortgage the real estate of his ward under the direction of the probate court is the education, support and maintenance of the minor. R. S. 1899, sec. 3504. The notes and deed of trust filed in this case, although executed by the curator under an

order of the probate court, being beyond the statutory powers of both the curator and the probate court, are void. Woods v. Boots, 60 Mo. 546; Windleton v. O'Brien, 68 Mo. App. 675; In re Estate of Bouie, 94 Mo. App. 367; Johnson v. Bank, 56 Mo. App. 257; Leet v. Gratz, 92 Mo. App. 422. (2) The plaintiff having voluntarily loaned her money for the purpose of paying off the Gerhard deed of trust, without fraud, undue influence, accident or mistake, and not for the purpose of protecting any interest of her own in the property, occupies the position of a mere volunteer, and is not entitled to be subrogated under the deed of trust so paid off and released. Kleimann v. Gieselmann, 114 Mo. 437; s. c., 45 Mo. App. 497; Bunn v. Lindsay, 95 Mo. 259; McDonald v. Quick, 139 Mo. 500; Norton v. Highleyman, 88 Mo. 621; Price v. Courtney, 87 Mo. 387; Price v. Estill, 87 Mo. 378; Anglade v. St. Avit, 67 Mo. 437; Wooldridge v. Scott, 69 Mo. 669; Wade v. Beldmeir, 40 Mo. 486; Evans v. Halleck, 83 Mo. 376; Brown v. Bank, 66 Mo. 427; Lemmon v. Lincoln, 68 Mo. App. 76. (3) (a) The homestead of appellants, the minor children of C. K. Garrison, is made by statute not "subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime." R. S. 1899, sec. 3620. (b) The voluntary payment of the Gerhard deed of trust had the effect of discharging the legal lien created during the lifetime of the father, and left the children's homestead clear. Kleimann v. Gieselmann, 114 Mo. 445. (c) The decree below has the effect of creating an equitable lien which had no existence prior to such decree, for the payment of a debt of the father, and is, therefore, in contravention of the statutory provision that the children's homestead shall not be subject to the payment of the father's debts except where legally charged thereon in his lifetime. Dickason v. Fisher, 137 Mo. 362.

*George W. Easley* with *Boyle & Priest* for respondent.

(1) If the plaintiff furnished the money to pay off the mortgage defendants were bound to pay, and at the request of the defendants, she was not a volunteer. Norton v. Highleyman, 88 Mo. 624; Evans v. Halleck, 83 Mo. 379; Wilson v. Brown, 13 N. J. Eq. 277; Gans v. Thieme, 93 N. Y. 232. The petition, and the order of the probate court cannot be read without a strong implication arising that there was an agreement that the plaintiff was in fact buying the lien of the first mortgage and the taxes. Certainly, she was to have a lien upon the property for the money she advanced. That money went to the extinguishment of a prior subsisting lien, and, if necessary that it shall rest upon contract, the court will do no violence in implying such contract from the facts and circumstances in this case. Crippen v. Chappel, 35 Kan. 495. The purpose and intent of the parties was clear, that the first mortgage should be paid off, and that plaintiff should have a first lien upon the property for her money. That lien not having been given, she is entitled to be subrogated to the lien of the first mortgage discharged with her money. Griffith v. Townsley, 69 Mo. 13; Valle v. Fleming, 29 Mo. 152; Jones v. Manly, 58 Mo. 559; Evans v. Snyder, 64 Mo. 516; Sims v. Gray, 66 Mo. 613; Snider v. Coleman, 72 Mo. 568; Schaefer v. Causey, 76 Mo. 365; Henry v. McKerlie, 78 Mo. 428; James v. Lane, 33 N. J. Eq. 30; Barnum v. Frost, 17 Gratt. 398. (2) Plaintiff has an equitable lien on the property, which a court of equity will enforce. If for any technical reason the doctrine of subrogation or substitution does not apply, we are entitled to have the property in this case charged with a lien, and such charge arises from the equities growing out of the contract or acts of the parties. We insist that the acts of the parties in this case and the admitted

facts are sufficient to charge the property in this case with the lien of the money advanced by the plaintiff, which went to the extinguishment of the former mortgage. (3) The defendants cannot make any valid contention under the homestead statute. The homestead was acquired after the debt, paid off by plaintiff's money, accrued. O'Shea v. Payne, 81 Mo. 316.

VALLIANT, J.—This is a suit in equity in which plaintiff seeks to subject certain real estate belonging to minors to the payment of money loaned by the plaintiff to the curator of the minors for the purpose of paying off a pre-existing encumbrance on the property.

The main facts in the case are these:

The property in question is a dwelling house and lot in St. Louis. Cornelius K. Garrison bought the property in 1893 and resided in it as his home until his death in 1895. He left a widow, Mary B. Garrison, and three minor children, who, together with Daniel E. Garrison, the duly appointed curator of the children, are the defendants in this suit.

When Cornelius K. Garrison bought this property it was encumbered with a debt of $5,200 principal, secured by deed of trust, the payment of which he assumed, but which he left unpaid at his death.

In March, 1899, there was due on this debt the whole of the principal and $182 of interest, and the creditor was demanding payment; besides this, there was due the State and city, for taxes, the sum of $742.22, a portion of which was required to be paid at once to avoid suit. There was no personal property available to the curator for the payment of these encumbrances, and he feared that the real estate of his wards would be sacrificed in the threatened foreclosure sales. Thereupon, he petitioned the probate court, stating these facts, and praying to be authorized to borrow $5,500 with which to pay these encumbrances and to secure the

loan by a deed of trust to be executed by himself as curator for the children and by the widow of Cornelius K. Garrison. The probate court made the order as requested, the curator borrowed the $5,500 from the plaintiff in this suit, and he in his representative capacity and the widow executed a note for that amount due in three years, with six semiannual six per cent interest notes, and a deed of trust on the real estate mentioned to secure the same.

The plaintiff was represented in the transaction by a real estate agent. The curator said to the agent that he desired to conduct the business with as little expense as possible and therefore preferred to have the old deed of trust and notes transferred to the lender, but the agent said that his clients preferred to take new papers and accordingly when the negotiations were ended and agreement reached, the agent received from his client the $5,500, and with it went to the bank where the old notes were, paid them, had the old deed of trust satisfied on the record, and presented to the curator an account of the expenditures, one item of which was $5,474.50 paid to the bank on the old notes and deed of trust besides $0:70 paid for releasing the old deed on record, expense of executing new deed of trust, the agent's own commissions and other items, the aggregate of all which exhausted the $5,500, and showed a balance of $62.74 as due the real estate agent, which balance Mr. Garrison, the curator, paid with his individual check. Mr. Garrison also paid the accumulated taxes. The old notes and deed of trust, after being cancelled and entered as satisfied on the record, were delivered to the curator. The new deed of trust was duly recorded. A title examiner gave the certificate of title on which this transaction was based and which was delivered by the real estate agent to the plaintiff (or to her son who acted for her), along with the new deed of trust. In this certificate, referring to this new deed of

trust, was this notation: "This is an equitable lien, and a decree of the circuit court will be necessary to foreclose as to all interest of minors."

The interest notes on this loan were paid as they matured except the last one due when the principal fell due three years after date. At that time the curator was unable to renew the note or obtain a new loan, no lender could be found who would take a curator's deed and the curator having no means of his wards with which to pay the debt this suit resulted.

The prayer of the petition is, first, that the deed of trust be decreed to be a valid lien and that it be foreclosed as a mortgage; second, if that cannot be done, then that an account be taken to show the amount of plaintiff's money that was used to pay off the former encumbrances, that the entry of satisfaction of the old deed of trust be set aside and the plaintiff subrogated to the rights of that creditor; third, if that cannot be done, then that the debt due plaintiff be decreed to be an equitable lien on the property in question and a foreclosure accordingly. The trial court took the last-named theory as the correct one, declared plaintiff's claim an equitable lien on the property, and decreed a foreclosure. From that judgment the minors appeal.

Subrogation is a doctrine of equity jurisprudence. "It does not depend on privity or contract, express or implied, except in so far as the known equity may be supposed to be imported into the transaction and thus raise a contract by implication." [27 Am. and Eng. Ency. Law (2 Ed.), 203.] It is a consequence which equity jurisprudence attaches to certain conditions. The parties may not have contracted for it either expressly or by legal implication, but if, in the performance of that contract which they did make, certain conditions have resulted which make it necessary for equity to interpose its authority in this respect it will do so, provided that in so doing it will violate no law and not alter

the contract. Equity violates no law and it does not assume to make a contract for the parties; it follows the law and upholds it, and when it comes to the relief of one to whom the law cannot afford adequate remedy it does not in so doing infringe the law or impair its force, nor does it reconstruct the contract between the parties.

Whilst the right of subrogation as understood in equity jurisprudence is not the direct legal effect of a contract, yet parties may by express contract accomplish the same practical result; for example, you may agree with a mortgagor to purchase and hold, on agreed terms, his outstanding mortgage obligation and when you have made the purchase you stand as to the security in the shoes of the original mortgagee, but that is the direct legal consequence of your purchase, it is not the equitable subrogation that we are now discussing. Whilst the right of subrogation, as imported into the transaction by equity jurisprudence, does not flow as a direct legal consequence from a contract expressed or legally implied, yet to this extent it is dependent on the contract, that is, it grows out of conditions resulting from the due observance of the contract and it must not be inconsistent with the terms of the contract.

As the law-writer above quoted, in effect, says, subrogation is to this extent implied, that is, we will presume that the parties making the contract knew of this equity principle and contracted in reference to it, so if the contract will bear the importation and the conditions demand it, subrogation will be imported into it. The contract may be silent on the subject, yet its terms may leave it open to the introduction of this equitable principle and in such case the principle may be applied. But the terms of the contract and the conditions arising from its performance may be such as to show that the parties did not intend that subrogation should result and in such case it will not result. Equity will not engraft this doctrine on the transaction in the

face of a contract that negatives the idea of subrogation. In other words, the contract may be silent on the subject yet not inconsistent with the idea of subrogation, or, on the other hand, it may be silent on the subject yet its terms expressly or by implication forbid the application of the doctrine. So it may be said that equity may apply the doctrine although the contract does not either expressly or by legal implication call for it, but it will not apply it if the contract either expressly or by legal implication forbids it. The parties may not have had subrogation in their minds at all when they made the contract, but that fact alone would not control in a question of application of the doctrine; equity will apply it though the parties may never have thought of it, if it is not inconsistent with the contract or in violation of any one's legal rights and if justice demands it. And the fact that the parties may, through ignorance of the legal consequence of their contract, have thought that they were providing adequate new security for the money advanced, will furnish no foundation for the interposition of this equitable principle if the contract forbids it; equity cannot reform the contract so as to make for them a contract which it may be conjectured the parties would have made for themselves if they had known what the law was.

The usual application of this principle occurs where a person at the request of the debtor pays the mortgage debt, or where one interested in the property pays an incumbrance to protect his own interest, or where he stands in the relation of surety to the debt. [Evans v. Halleck, 83 Mo. 376; Norton v. Highleyman, 88 Mo. 621; Bunn v. Lindsay, 95 Mo. 258; 27 Am. and Eng. Ency. Law (2 Ed.), 203.]

The text last cited concludes the sentence with these words: ''or wherever a denial of the right would be contrary to equity and good conscience.'' That of course is understood to mean equity as prescribed and

circumscribed by the rules of equity jurisprudence and the dictates of good conscience within the same boundaries. To quote the language of Judge Scott in his dissenting opinion in Valle v. Fleming, 29 Mo. l. c. 166: "No man is wiser than the law; and miserable is that system of jurisprudence under which the rights of litigants depend on the notion of right or wrong entertained by any man or set of men."

The doctrine of subrogation has frequently been considered by this court. In the case last referred to, Valle v. Fleming, 29 Mo. 152, it was held that a purchaser of land at an administrator's sale who failed to get a title because of irregularity in the proceeding, but who had paid the purchase money and the administrator had applied it to the discharge of a pre-existing mortgage, was, as against the heir, entitled to be subrogated to the rights of the mortgagee. In that case the purpose for which the sale was ordered by the probate court was one for which the law authorized such sale to be made, that is, to pay debts, and the reason the administrator's deed was void was that he had not given the notice that the statute required. The court held that it would be inequitable to allow the heirs to repudiate the deed for irregularity in the proceeding yet retain the advantage of a discharge of the mortgage by use of the plaintiff's money. The difference between that case and this is, that the administrator's sale was for a purpose for which the law authorized a sale and the only reason the sale was not valid was irregularities in the proceeding, whereas in this case the proceedings were in due form, but the purpose for which the probate court essayed to authorize the curator to execute the deed was not one for which the law authorized the curator to encumber his ward's land.

In Evans v. Halleck, 83 Mo. 376, an administrator paid off a mortgage on the land with funds belonging to the estate under the belief that there was enough per-

sonal assets to pay the mortgage and also the debts allowed against the estate, which proved to be a mistake; it was held, in favor of the widow and heirs, that in paying off the mortgage the administrator was a mere volunteer and not entitled to subrogation.

In Norton v. Highleyman, 88 Mo. 621, the defendant Highleyman owned the land subject to a mortgage given by a former owner to the county; on default in payment a sale to foreclose was advertised by the sheriff; on the day appointed the plaintiff appeared and informed the sheriff and Highleyman that he was willing to bid the amount of the mortgage debt and costs for the land, but they told him that there would be no sale that day, and thereupon he went away; after he left, however, the sale did occur and the land was struck off to Highleyman, but Highleyman did not then pay his bid, and had not done so seven days thereafter, when the plaintiff appeared before the county court and offered to pay the amount of the debt and costs for the land; his offer was accepted by the county court and he paid the amount into court supposing that he was to have a deed, but he did not get a deed and failing to get what he expected, he brought suit against Highleyman seeking to be subrogated to the rights of the mortgagee; it was held that he was a mere volunteer and entitled to nothing. In that case Highleyman was permitted to take the benefit of the plaintiff's payment of the mortgage and keep the land. It was a hard case, but the fact was the plaintiff through ignorance of the law had volunteered to pay another man's debt, and the court could not relieve him of the consequence of his own blunder.

In Bunn v. Lindsay, 95 Mo. 250, Lindsay, the owner of the land, executed a deed of trust on it to secure a debt to a building company, which deed was duly recorded, after that a judgment was rendered against Lindsay, a transcript of which was filed in the office of

the clerk of the circuit court of the county in which the land lay, and it was duly entered on the judgment roll; after that Lindsay borrowed from Bunn money with which to pay the debt covered by the deed of trust to the building company, and executed a new deed of trust for the loan, which was recorded. In the application for the loan it was expressly stated that the money was to be used to pay off the debt covered by the then existing deed of trust, and Bunn's agent who conducted the business for him (like the real estate agent of the plaintiff in the case at bar) himself handled the money and with it paid the debt and attended to the releasing on the record of the former deed of trust. The negotiations for the new loan were begun before, but were not concluded until after, the judgment creditor had had the transcript of his judgment filed and entered on the judgment roll. Bunn's agent had failed to examine the judgment roll and he had no actual notice of this judgment. The land was sold under the judgment and Bunn brought suit seeking to be subrogated to the rights of the first mortgagee. The court denied his prayer, saying, per BRACE, J.: "The debt due by Lindsay to the building company and the lien given to secure it were absolutely extinguished by the payment. Such was the intention of all parties to the transaction. The plaintiff relied for security for the money he advanced solely upon the deed of trust which he took at the time, and the sole ground upon which a court of equity is asked to intervene in his behalf in this case is the assumption that he would not have parted with his money to make the loan and payments if he had known in January that Paramore's judgment lien had attached to the premises in December."

In the case at bar the only ground on which a court of equity is asked to intervene in the plaintiff's behalf is that she would not have parted with her money if she

had known that a curator had no authority in law to make such a deed.

The case at bar is very much like that of Kleimann v. Gieselmann, 114 Mo. 437; same case, 45 Mo. App. 497, in its most important features. In that case the father died leaving his homestead encumbered with a mortgage, leaving also a widow and minor children; the new loan was obtained for the purpose of paying off the old mortgage and the money so obtained was used for that purpose, the new mortgage (or deed of trust) was executed by the widow alone, she and the lender both believing at the time that under the terms of her husband's will she was the sole owner of the property, which was a mistake in their interpretation of the will. After the mistake was discovered, it was sought to have the doctrine of subrogation applied to the transaction on the ground that the children had obtained the benefit of the new loan in the discharge of the mortgage which encumbered the property when it descended to them, and that equity and good conscience demanded that the new loan should be placed in the position of the old one. But the St. Louis Court of Appeals, in an opinion by ROMBAUER, J., which when the cause came here was, in an opinion by BURGESS, J., adopted as the opinion of this court, held that in so far as the children were concerned the new lender was a mere volunteer and not entitled, as to them, to subrogation. This court said that the mistake under which the parties labored, though it was mutual, was a mistake of law, and therefore no room for equity interference was found on the ground of mutual mistake. In the case at bar, both parties doubtless thought that the deed of the curator, fortified with the express order of the probate court, was valid; in that they were mistaken, but it was a mistake of law.

There are other cases in our books in which this court has discussed this doctrine of subrogation, but

the cases above referred to are sufficient to show the view that this court has from the first taken of this sub- ject.

The statute prescribes the only purposes for which a curator, even with the sanction of the probate court, may mortgage his ward's lands, and the borrowing of money to discharge a pre-existing encumbrance is not one of those purposes. [Sec. 3504, R. S. 1899.]    If a power in the curator might be implied from the neces- sity of a case, surely no more important purpose could be imagined than the education and maintenance of the ward, therefore under such a theory there would have been no necessity for a statute expressly authorizing the curator to incumber the ward's property for his educa- tion and maintenance. The expression therefore of that particular purpose in the statute is in effect the exclu- sion of all others, and it means that the power to encum- ber the ward's property does not exist except for the purposes expressed in the statute and except that it be exercised in the manner prescribed by the statute.

It is urged in the argument that this transaction was manifestly for the interest of the children, that foreclosure was threatening, and they had no means with which to discharge the encumbrance. It may or may not, as a matter of fact, have been for the best in- terest of the children.   Whether it would have resulted more to their advantage to have allowed the property to go to sale at the time of the threatened foreclosure, than to postpone it three years until the new mortgage should mature, depends on circumstances.   There is nothing in this record that would justify us in saying that these children were any better off at the end of the three years' limit of the new mortgage than they were before, and on the other hand if it is a fact that the property would have sold better under the old mort- gage, either because the market was better then or the title was clearer, the children have been deprived of

that advantage by this transaction. But this is said only in response to the suggestion that the new mortgage was manifestly to the interest of the minors; it is not on that ground that the decision must rest. We are not authorized to speculate on what may have been best for the minors in such a case; it is sufficient for us to know that the law does not authorize a curator to do what this curator attemped to do, and therefore his act was void.

The evidence shows that the lender did not rely on the old mortgage, but the contrary, the lender's agent himself, with the money loaned, paid the old debt and saw to it that the satisfaction of the old deed of trust was entered on the record. In order to subrogate the plaintiff to the rights of the original mortgagee we would have to make a new contract for the parties and give a different interpretation to the equitable doctrine of subrogation from that given in the cases above referred to.

The learned trial judge decided that this was not a case for the application of the doctrine of subrogation and in that respect his conclusion was correct, but he held that the plaintiff was entitled to an equitable lien and under that theory gave the plaintiff practically the relief prayed.

The doctrine of equitable lien follows closely on that of subrogation. They both come under the maxim "equality is equity," and they are applied only in cases where the law fails to give relief and justice would suffer without them. But the doctrine of equitable lien has its prescribed boundaries as well as that of subrogation; it is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor, any more than, as an illustrious law-writer said, to the measure of his foot. The right to an equitable lien arises when a party at the request of another advances him money to be applied and which is applied

to the discharge of a legal obligation of that other, but when, owing to the disability of the person to whom the money is advanced, no valid contract is made for its repayment. For example, if money is advanced to a minor to pay a debt which he has incurred for necessaries furnished him, no action at law lies to recover of the minor on a contract express or implied for the repayment of the money loaned, yet as the money was loaned to discharge a debt for which the minor was liable at law and it was used for that purpose a court of equity will charge a lien on the minor's property to repay the sum advanced. [3 Pomeroy, Eq. Juris., sec. 1300.] The doctrine of equitable lien is not limited to an advancement to a minor, but it is limited to cases where the same principle applies as is illustrated in the above supposed case. In the case at bar, there was no legal obligation on these minors to pay this debt, and therefore there was no foundation on which to build an equitable lien. The doctrine of equitable lien applies no more in favor of a mere volunteer than does the doctrine of subrogation.

In vain would a statute prescribe the limit of a curator's power to mortgage his ward's property if a court of equity should, by giving it another name, whether it be subrogation or equitable lien, invest an unauthorized deed with substantially the same effect it would have had if it had been expressly authorized by the statute.

The court erred in holding that the plaintiff was entitled to an equitable lien. The judgment is reversed and the cause remanded to the circuit court with directions to enter judgment for defendants, and dismissing the plaintiff's bill, without prejudice, however, to the plaintiff's right to foreclose her deed of trust as to the interest of Mrs. Mary B. Garrison. *Brace, C. J.,* and *Marshall, J.,* concur; *Lamm, J., dubitante.*