HENRY A. McKAY, Guardian and Curator of JOHN T. ARNOLD, a Person of Unsound Mind and Incapable of Managing His Affairs, and HAZEL ARNOLD, His Wife, Appellants-Plaintiffs, v. D. A. SNIDER, Guardian and Curator of ROY A. LAWRENCE, a Person of Unsound Mind and Incapable of Managing His Affairs, ROY A. LAWRENCE, and DAN BOYD, Trustees, Appellants-Defendants.—No. 39337.—190 S. W. (2d) 886.

Division One, November 5, 1945.

Rehearing Denied, December 3, 1945.

*John T. McKay* for plaintiffs-appellants.

676

*Elbert L. Ford* and *Arthur U. Goodman, Jr.,* for defendants-appellants.

DALTON, C.—Action to set aside and cancel a note for $1,000 and the deed of trust securing it, with a cross action to impose an equitable lien on the described real estate for money borrowed, if the note and deed of trust be cancelled. The trial court cancelled the note and deed of trust, imposed an equitable lien and taxed costs (except the costs of plaintiffs' witnesses) against defendants. Both plaintiffs and defendants appealed.

On November 18, 1939, John T. Arnold, a person of unsound mind, was the owner of 30 acres of described real estate in Dunklin County and D. A. Snider was his duly appointed, qualified and acting guardian and curator. Snider was also the duly appointed, qualified and acting guardian of the person and curator of the estate of Roy A. Lawrence, a person of unsound mind. Both Arnold and Lawrence were disabled veterans of World War I and their estates were pending in the Probate Court of Dunklin County. On the date mentioned, Snider as guardian and curator of the estate of Arnold borrowed from himself, as guardian and curator of the estate of Lawrence, the sum of one thousand ($1,000) dollars. It is admitted (in the agreed statement of facts) that Snider "received said $1,000 as guardian and curator of Arnold and deposited it to the credit of himself in the bank as guardian of Arnold; and (that) he thereafter included same in his settlements with the Probate Court of Dunklin County." When the loan was made, John T. Arnold and Hazel Arnold, his wife, and D. A. Snider, as guardian and curator of Arnold joined in executing (in favor of D. A. Snider, as guardian and curator of the estate of Lawrence) the note and deed of trust now sought to be set aside.

In the petition plaintiffs charged that the note and deed of trust were void "because each was executed . . . without first filing a petition and procuring an order from the Probate Court . . .

authorizing him, the said D. A. Snider, guardian and curator . . .
to borrow said sum of money and to execute said note and deed of
trust securing the same.''

Defendants' answer and cross petition alleged that a petition was
filed and an order made authorizing the estate of Lawrence to loan,
and the estate of Arnold to borrow, the said $1,000; that the estate
of Lawrence did pay over to the estate of Arnold the sum of $1,000;·
that said amount was duly and legally charged to the said Snider, as
guardian and curator of Arnold; that the said Arnold was given full
credit and benefit therefor; that the records and settlements of the
Probate Court duly and properly reflected ''the borrowing of said
money for the use and benefit of said estate and in what particular
the said money was used by said estate''; that the estate of Lawrence
was the owner and holder of the note and deed of trust; and that the
note was due and unpaid. Defendants asked an equitable lien, if
the note and deed of trust were cancelled.

Plaintiffs' answer to the cross petition denied that Snider, as
guardian and curator for Lawrence, ever paid over to himself as
·guardian and curator of Arnold, the sum of One Thousand Dollars,
as mentioned in the note and deed of trust; and denied that Arnold
in any settlement was given full credit and benefit therefor, or that
the said Arnold ▪▪▪▪ had received any benefit from the money bor-
rowed from the estate of Lawrence.

On.trial, the parties agreed that they were unable ''to find in the
files and records of the Dunklin County Probate Court a petition or
order covering authority to execute the note and deed of trust.'' It
was further agreed that the loan of $1,000 had never been repaid to
the Lawrence estate; that no tender of such payment had ever been
made by anyone; and that, on July 25, 1941, Snider resigned as
guardian and curator of the Arnold estate and was succeeded, as such,
by Henry A. McKay.

On behalf of plaintiffs, there was evidence that ''the probate files
of the Arnold estate and the indices of the probate records'' had been
searched; that no petition or order authorizing the note and deed of
trust could be found; and that a search of the files of the Arnold
estate in the office of the Veteran's Administration disclosed no
notice relative to the filing of such petition or order.

On behalf of defendants, the evidence tended to show that in
November 1939, Snider consulted the Probate Judge of Dunklin
County about the estate of Arnold borrowing $1,000 from the estate
of Lawrence and executing a note and deed of trust as security for
the loan; that, thereafter Snider, Arnold and Arnold's wife went to
the Probate Judge's office, which was then located in a store building
while a new courthouse was being constructed; that the Probate Judge
prepared ''a petition to borrow $1,000 from the Lawrence estate for
the Arnold estate''; that the petition stated the purpose of the loan

was to pay debts of the Arnold estate, towit, notes and interest due the People's Bank of Holcomb, to pay for the ward's automobile and to "pay off necessaries"; that Snider signed the petition as guardian and curator of the estate of Arnold; that the petition was filed with the Probate Court; and that the Probate Judge gave Snider "the petition and order, or a copy of it."

There was further testimony that the Probate Judge made an order authorizing Snider to borrow $1,000 from the Lawrence estate for the benefit of the Arnold estate; that the 30 acres of described real estate was to be given as security; that, after Snider received a copy of the order, the note and deed of trust were prepared and signed by Snider, Arnold and Arnold's wife; that Snider then took the $1,000 from the Lawrence estate and put it in the Arnold estate; and that a copy of the order was sent to the Veteran's Administration at their request.

Defendant Snider testified that the automobile purchased for Arnold was purchased under authority of the Probate Court. The petition filed and the order of the court for the purchase of the automobile were in evidence. Defendant Snider further testified that, after the $1,000 loan was obtained, he paid off certain indebtedness of the Arnold estate, towit, one note to the Bank of Holcomb in the sum of $550, a note to the Universal Credit Company on the Arnold automobile in the sum of $387.30 and other items of indebtedness. Defendants offered in evidence the fifth annual settlement of Snider as Guardian and Curator of Arnold, as filed on May 14, 1940, showing the expenditure of the $1,000 loaned to the Arnold estate. The settlement had been duly approved by the Probate Court. Defendants further offered in evidence the application and order of the Probate Court incurring the indebtedness evidenced by the $550 note and the authority to execute the note and the deed of trust securing it.

Defendants-appellants assign error on the order and judgment of the court cancelling the note and deed of trust. It is contended (1) that the petition (requesting authority to borrow money to pay the existing indebtedness of the Arnold estate and to execute the note and deed of trust) was duly filed; (2) that the order authorizing execution was duly made by the Probate Court; and (3) that "the (trial) court should have found as a fact that the petition was filed and the order made."

The trial court heard the oral testimony of the witnesses concerning the filing of the petition and making of the order. It is conceded that the records of the Probate Court of Dunklin County do not show the filing of any such petition or the entering of any such order. On the evidence presented the court cancelled the note and deed of trust. The general finding for plaintiffs on the issues presented by the petition necessarily included a finding that the note and deed of trust were unauthorized.

■ A Probate Court is a court of record and speaks only through its records. Farris v. Burchard, 242 Mo. 1, 9, 145 S. W. 825; Davidson v. Davidson Real Estate & Inv. Co., 226 Mo. 1, 29, 125 S. W. 1143. While the evidence tended to show that some file papers ■ may have been missing, there was no evidence tending to show that the books and records of the Probate Court had been mutilated, lost or destroyed. The court rejected the oral testimony of the witnesses concerning the petition and order. We defer to that finding and hold that the note and deed of trust were unauthorized by the Probate Court.

■ Defendants-appellants further contend that the order and judgment cancelling the note and deed of trust as to plaintiff, Hazel Arnold, is unsupported by either pleadings or evidence. They insist that the petition does not state facts sufficient to constitute a cause of action in favor of Hazel Arnold and the evidence entitles her to no relief in equity.

The petition states "that Hazel Arnold is the wife of said John T. Arnold . . . and is made a party plaintiff because she purported to have signed a purported note and deed of trust hereinafter mentioned." The only ground for the relief applicable to her was an allegation that the person purporting to take her acknowledgment to the deed of trust was not a notary public and "had no commission or authority to sign and acknowledge deeds of trust." It is now admitted that the acknowledgment was taken by the Probate Judge and that the seal of the Probate Court was affixed to the acknowledgment.

The record shows that the money was borrowed for the benefit of the husband's estate; and that part of it was to be used and was used to discharge the balance due on the Arnold automobile, which was used by Arnold, his wife and children. Both husband and wife signed the note and deed of trust, along with the guardian and curator. Execution and delivery of the note was admitted, although Mrs. Arnold did testify that she refused to sign the note and deed of trust for quite a little while after it was presented to her. The note is due and unpaid and held by the Lawrence estate. No fraud, mistake or undue influence was charged or proven. Mrs. Arnold was, of course, a proper party to any action by a co-maker of the note to be relieved from liability, but the petition wholly failed to state a cause of action in her favor and there was no evidence in the record to support the judgment granting her affirmative equitable relief.

■ Error is assigned on the court's action in ordering the note and deed of trust cancelled *"without requiring repayment* of the amount obtained thereon." On the theory that "he who seeks equity must do equity," it is now contended that plaintiffs were not entitled to cancellation, "unless and until" repayment of principal and interest in full had been made to the Lawrence estate. No such issue was raised by the pleadings. The cause was defended solely on the

theory that the required petition was filed and the order made. However, the same judgment which orders the cancellation of that note and deed of trust does, in fact, require repayment of the funds obtained and, further, grants the affirmative relief requested in the cross action. Defendants may not, therefore, complain. The assignment is overruled.

A further assignment concerning the taxing of costs will be considered later.

▇ Plaintiffs-appellants assign error on the court's action in "establishing a lien . . . against the lands described in plaintiffs' petition . . . and fixing the date of payment of said lien." It is contended that a valid equitable lien could not be imposed upon the described real estate because (1) the court, having cancelled the contract made by the parties themselves, was powerless to make a new contract for them; (2) "the equitable principle of fixing liens against real estate" had no application to the facts in evidence; (3) the Arnold estate did not get the benefit of the $1,000 borrowed from the Lawrence estate.

The pleadings and evidence in this cause presented two issues of fact, towit, (1) Was the note and deed of trust authorized by the Probate Court; and (2) Did the estate of Arnold receive the benefit of the money borrowed from the estate of Lawrence. The first issue was found for plaintiffs and the second issue for defendants. Plaintiffs-appellants contend that the Arnold estate receive no benefit from the $1,000 loan because (1) the guardian and curator took a "double credit" in making settlement with the Arnold estate; (2) the guardian and curator was not entitled to credit for the payments made to the Universal Credit Company; (3) the $550 note paid off was "borrowed for an unauthorized purpose" and the deed of trust securing it "was not a valid loan against the real estate of John Arnold"; and (4) the $550 note and deed of trust were void because neither Sec. 606, R. S. 1939 (requiring ten days' notice to the Veterans' Administration) ▇ nor Sec. 482, R. S. 1939 (requiring the court's approval of the loan agreement) were complied with.

As stated, it is admitted that D. A. Snider, as guardian and curator of the Arnold estate, received the $1000, deposited it to the credit of himself in the bank as such guardian and curator, paid it out as such, included the same in his settlement with the Probate Court of Dunklin County and the settlement was approved by the court. The settlement in question is included in the record before us. Apparently, the claim concerning a "double credit" arises from the fact that two loans are involved and credit was taken for the specific items paid with the proceeds of the first loan, $550, obtained from the Bank of Holcomb, and also for the payment of this $550 note when it was paid from the proceeds of the $1,000 note. The guardian and curator charged himself with the receipt of both the $550 and the $1,000, and,

assuming there is a double credit, there is a double charge. In any event, the settlement had received the approval of the Probate Court, wherein the estate was pending, and that judgment is not in issue here.

The credit taken for the $387.30 (paid to the Universal Credit Company and from the proceeds of the $1,000 loan) is objected to on the theory that the ward had furnished money to the guardian for these payments out of his (the ward's) allowances. While this contention was supported by some evidence, the court properly rejected it in favor of the settlement which had had the approval of the Probate Court.

Was the $550 note (paid off with part of the proceeds of the $1,000 loan) a valid obligation of the Arnold estate? Plaintiffs-appellants insist that the guardian and curator "was not entitled to any credit taken in his fifth annual settlement . . . for the payment of the $550 note," because the note was void and the estate received no benefit from its payment. In May 1939, Arnold then under guardianship in Dunklin County, apparently disappeared from his home and was found in the custody of the police at Bakersfield, California, being held for observation as to the seriousness of his mental condition. Arnold was the owner of the described real estate in Dunklin County, but there was no personal property in his estate. An application was duly presented by his guardian and curator to the Probate Court to borrow funds on the described real estate (1) for the purpose of returning the ward to the State of Missouri for examination and observation, and for hospitalization, if found necessary by the Veteran's Administration at Jefferson Barracks, and (2) for the payment of certain past due obligations of the estate. The order was duly entered expressly authorizing the borrowing of the $550 from the People's Bank of Holcomb, Holcomb, Missouri, for the purposes stated, and the guardian and curator was authorized to execute the deed of trust. Thereafter, the $550 note and deed of trust were duly executed and the sum of $300 was expended in returning Arnold to Missouri and $199.55 was paid to discharge tax liens on Arnold's real estate. Plaintiffs-appellants' theory is that Secs. 475, 476, 477 and 478, R. S. 1939, were not complied with, and no debt or lien was created, because the cost of caring for and returning the ward to his home was not a debt of the estate, or within any statutory authority for encumbering the ward's real estate. No doubt the probate court deemed the cost of transportation and care of the ward, under the circumstances stated, a proper expenditure for support and maintenance and, accordingly, entered the order. The court had jurisdiction of the subject matter and it appears that the application and order were in due form upon their face, that is, unless the proposed expense for the care and transportation of the ward, under the facts stated, did not come under the head of maintenance.

We think it did. The order and judgment in question, like the order approving the settlement of May 14, 1940, is not before us for review on its merits and it is not subject to collateral attack. Probate courts are courts of record, and their judgments and orders must be respected. Phillips v. Phoenix Trust Co., 332 Mo. 327, 58 S. W. (2d) 318, 320; Texier v. Texier, 342 Mo. 1220, 119 S. W. (2d) 778.

Was the $550 note or deed of trust void because of any failure to comply with Secs. 482, or 606, R. S. 1939? We think it is apparent from the record that Sec. 482, R. S. 1939, was fully complied with. Plaintiffs-appellants' theory that Sec. 606 (requiring notice) was not complied with is based upon the fact that the application to borrow the $550 was filed and the order entered on May 29, 1939, and the $550 note and deed of trust bear the same date. No issues were raised by the pleadings with reference to Sec. 606, or with reference to the order and judgment of the probate court authorizing the execution of the said note and deed of trust. There was no evidence that the U. S. Veteran's Bureau had entered its appearance in writing in the matter of the estate of Arnold or that the required notice was not given. The Veteran's Bureau is not complaining but, in fact, approved the settlement showing the disposition of the $1,000 borrowed from the Lawrence estate. Under such circumstances the validity of the debt or lien discharged from the proceeds of the $1,000 loan was uneffected by Sec. 606, supra.

It is apparent that the Arnold estate not only received the $1,000 from the Lawrence estate, but that the Arnold estate has had the benefit of the fund since November 18, 1939. The trial court's finding of fact is, accordingly, approved.

Was the Lawrence estate entitled to an equitable lien on the described real estate? Plaintiffs-appellants rely particularly on the case of Capen v. Garrison, 193 Mo. 335, 92 S. W. 368 to support their contention that a court of equity will not make a contract for the parties or impose an equitable lien under the facts of this case. Except for the citation of cases and the contention of no benefit to the Arnold estate from the proceeds of the loan, no effort has been made to point out any reason for denying an equitable lien.

The Capen case was partially overruled in Berry v. Stigall (En Banc), 253 Mo. 690, 703, 162 S. W. 126. The facts upon which the Capen case was ruled are clearly distinguishable from the facts here. In the Capen case certain minor children were the owners of real estate encumbered by certain tax liens and a deed of trust, which secured a note of their deceased father from whom they derived title. To protect the real estate from foreclosure under the prior liens, the children's guardian petitioned the Probate Court and obtained an order to borrow money and execute a new deed of trust to discharge these liens, which was done. Subsequently, the holder of the new

note and deed of trust sought to have the deed of trust declared a valid lien, or, if that be denied, that the debt be decreed an equitable lien on the real estate. Relief was denied because "the purpose for which the probate court essayed to authorize the curator to execute the deed was not one for which the law authorized the curator to encumber his ward's land." The court said: "There was no legal obligation on these minors to pay this debt, and, therefore, there was no foundation on which to build an equitable lien. The doctrine of equitable lien applies no more in favor of a mere volunteer than does the doctrine of subrogation. In vain would a statute prescribe the limit of a curator's power to mortgage his ward's property if a court of equity should, by giving it another name, whether it be subrogation or equitable lien, invest an unauthorized deed with substantially the same effect it would have had if it had been expressly authorized by the statute."

The court in that case, however, recognized the rule contended for by defendants-appellants, as follows: "The doctrine of equitable lien follows closely on that of subrogation. They both come under the maxim 'equality is equity,' and they are applied only in cases where the law fails to give relief and justice would suffer without them. But the doctrine of equitable lien has its prescribed boundaries as well as that of subrogation; it is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor, any more than, as an illustrious law-writer said, to the measure of his foot. The right to an equitable lien arises when a party at the request of another advances him money to be applied and which is applied to the discharge of a legal obligation of that other, but when, owing to the disability of the person to whom the money is advanced, no valid contract is made for its repayment. For example, if money is advanced to a minor to pay a debt which he has incurred for necessaries furnished him, no action at law lies to recover of the minor on a contract express or implied for the repayment of the money loaned, yet as the money was loaned to discharge a debt for which the minor was liable at law and it was used for that purpose a court of equity will charge a lien on the minor's property to repay the sum advanced."

We have held that the Arnold estate received the $1,000 from the Lawrence estate and received the full benefit of the fund in the discharge of valid obligations. The good faith of the parties involved is not questioned. The Probate Judge admits that he was consulted about the transaction in question, and the acknowledgment of the deed of trust, securing the ██ note, bears both his signature and the seal of the court. The receipt of the loan and the disposition of its proceeds was reported to the Probate Court in the settlement filed with, and approved by, the Court. The note and deed of trust evidence the intention of the parties that the loan be secured by a first lien on the described real estate. The statutes authorized the guard-

ian and curator, under the facts shown, and with the consent and approval of the Probate Court, to mortgage the ward's real estate for the payment of debts. In acting to refinance the indebtedness, the guardian and curator acted to protect the assets of the estate. The guardian and curator of the Lawrence estate in furnishing the funds for the payment of the debts of the Arnold estate was not a volunteer. Berry v. Stigall, supra; Netherton v. Farmers Exchange Bank, 228 Mo. App. 296, 63 S. W. (2d) 156. The proceedings for refinancing failed, not because prohibited by statute or public policy, but because of irregularity, in that, the controlling records of the Probate Court failed to show that any petition asking authority was filed or that any order to borrow the money and execute the deed of trust was entered of record. The Arnold estate still owns the real estate and the rights of no other parties have intervened.

We do not understand that the granting of proper equitable relief in a proper case has ever been held to be the making of a new contract for the parties. While the $1,000 note and deed of trust has been cancelled, the Arnold estate has the fund which was obtained from the Lawrence estate and this fund ought justly to be repaid. The Arnold estate may not retain the fund and also the described real estate relieved of the lien of the deed of trust. The assets of the Arnold estate consist of the described real estate. Ordinarily, a court of equity will not create a lien upon real estate in favor of a party unless, from the nature of the transaction, rights have sprung up which ought to be held binding upon the specific property. 33 Am. Jur. Liens, Sec. 21, p. 430. In this case the fund advanced was used, as stated, to discharge a prior valid lien on the described real estate and to pay for property, which the probate court by its order and judgment deemed necessary for the proper maintenance of the ward and his family. Under the statutes the described real estate could be mortgaged or sold for the payment of these debts. In equity and good conscience the Lawrence estate may be subrogated to the rights of the creditors whose claims have been discharged and the relieved property may be impressed with a lien. Berry v. Stigall, supra. "When a court of equity is rightfully possessed of a case, it will not relinquish jurisdiction 'short of doing complete justice.'" Nodaway County v. Alumbaugh, 348 Mo. 354, 153 S. W. (2d) 74, 77. We deem the judgment in favor of the Lawrence estate on the cross petition to be right and in accordance with established precedents.

That part of the judgment setting aside the note and deed of trust as to the Arnold estate is affirmed, but that part granting equitable relief to Hazel Arnold is reversed and the cause remanded with directions to dismiss her petition. That part of the judgment granting affirmative equitable relief to the Lawrence estate on the cross petition is affirmed and the cause remanded with directions to

686

fix a reasonable time within which the amount due shall be repaid and, if not so repaid, for the foreclosure of the lien. This being an equity suit, where some issues were found for plaintiffs and some for defendants, the matter of costs was within the discretion of the trial court and no abuse of that discretion appears. Bender v. Zimmerman, 135 Mo. 53, 36 S. W. 210; Bruegge v. State Bank of Wellston (Mo. Sup.), 74 S. W. (2d) 835, 842. In view of the reversal of that part of the judgment in favor of Hazel Arnold the court may in its discretion make an equitable reassessment of the costs. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.