THOMAS BERRY et al. v. WILLIAM STIGALL and WILLIAM A. WILSON, Administrators of Estate of THOMAS L. KING, Appellants.

In Banc, December 24, 1913.

1. EQUITY: Paying Debt of Another: Motive. Equity seeks to prevent the unearned enrichment of one at the expense of another, and will apply the principle to aid those who have paid the debt of another under circumstances in which equity will imply a sufficient motive, whether such motive consists in the protection of an interest in the person invoking it, the performance of a fiduciary relation, or the invitation of the public or of him whose debt is paid.

2. ———: Paying Debt of Testator. Equity will protect a payee of a note and the beneficiary of a deed of trust given to secure its payment who furnished the money to pay off a debt and mortgage upon land left by a testator to his wife as trustee to use and control for the support, maintenance and education of his children until the youngest arrived at age, and she dying, her successor, who was also guardian of the persons and estates of the minors, as such trustee, borrowed of said payee the money to pay off the existing debt, and used the rents to support and educate the minors.

3. ———: Retaining Proceeds of Void Sale. It would be unjust to permit a person to give a mortgage on land and take the borrowed money and then because the conveyance happens to be informal or void to allow him or his heir to have the mortgage declared void and keep both land and money.

4. SUBROGATION: Substituted Mortgagee: Invalid Incumbrance on Minors' Estate: Retention of Fund. Testator, the owner of land on which there was a deed of trust to secure an

Berry v. Stigall.

existing debt, by his will gave his wife power to sell the personal estate to pay his debts, his real estate to her to use and control and to use the rents and profits to support and educate his children until the youngest reached legal age, and thereafter to said five children. The wife died and one of the defendants, who had been appointed guardian of the persons and estates of the four minors, was appointed trustee to take charge of the estate and rent the same and apply the proceeds of the rents to "the purposes set out in the will." The trustee borrowed from the other defendant sufficient money to pay the existing deed of trust, and as trustee made a new one securing the loan. There are no intervening interests, either legal or equitable, to be considered. *Held* that, although the trustee exceeded the limit of his authority in attempting to mortgage the land, the money was for the benefit of the children's estate, and enabled the trustee to use the rents for their support and maintenance, and as they ask both-to retain the money and to have the deed of trust declared invalid, the payee of the note will be held to be a substituted mortgagee in the incumbrance which his money discharged.

*Held*, by BOND, J., dissenting, with whom GRAVES and FARIS, JJ., concur, that there is no element of subrogation in the case; that the trustee had not a trace of title or vestige of estate in the land, and did not attempt to obtain an order of court authorizing him to incumber the land to secure a loan of money to pay the existing deed of trust; and there is no ground for an equitable lien. The whole transaction was due to a mistake of law, for which, though both the trustee and the lender participated, there is no relief.

5. ————: **Trust Estate: Right of Trustee to Borrow Money.** The executor of the will having made final settlement of the estate without paying the existing mortgage, and there being no funds on hand with which to pay it, and the will creating a trust, the appointed trustee should have borrowed money to pay off the incumbrance, and save the land to the children; but he should have applied to the circuit court for an order authorizing him to do that, but that informality should not prevent the court from applying the rule of subrogation in favor of the lender and foreclosing the mortgage, since the money was faithfully applied to the purposes for which it was borrowed. [GRAVES, BOND and FARIS, JJ., dissenting.]

Appeal from DeKalb Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. H. Haynes* for appellants; *Hewitt & Hewitt* of counsel.

(1) Defendant was entitled to be subrogated to the right of the mortgagee of John Berry and Clarissa Berry, his wife, under the doctrine of equity jurisprudence. Subrogation does not 'depend upon privity of contract, either express or implied, only in so far as the known equity may be supposed to be imported into the transaction and thus raise the implication of a contract. In other words it is founded upon the facts and circumstances of each particular case, and on the principles of natural justice. Founded on the dictates of refined justice; of grace, and not of force. 27 Am. & Eng. Ency. Law (2 Ed.), p. 203; 37 Cyc. 363; Furnold v. St. Bank, 44 Mo. 336; Moore v. Lindsay, 52 Mo. App. 479; Levi v. Martin, 48 Wis. 198; Chaffee v. Oliver, 39 Ark. 531. (2) The fact that the mortgage was paid and intended to be paid is immaterial. Equity will consider it as yet alive so long as the rights of the parties require. Cobb v. Dyer, 69 Me. 494; Barnes v. Mott, 64 N. Y. 397; Crippen v. Chappel, 35 Kan. 495. (3) If a mortgagor request a third party to pay the debt secured by the mortgage he becomes entitled in equity to the benefit of the mortgage; and in such case a court of equity will subrogate him to all the rights of the creditor. Wolff v. Walter, 56 Mo. 295. If the position taken by us as to the powers of trustee under the will is correct, then the request of Stigall to King to pay the mortgage debt is as good and binding as if John Berry had made it, and the above rule will apply.

*L. F. Henry* and *Kendall B. Randolph* for respondents.

(1) The defendants in their answer do not pretend that the mortgage in question is a valid mortgage, neither do they in their brief, nor pretend that

Stigall had any authority whatever to execute it, but they ask for relief in the alternative; that, if the court does not find that they have a lien on the land, the court will adjudge that they be subrogated to the rights of William Q. Mintern, and that the old Mintern deed of trust be revived and be declared to be a lien. None of the authorities cited by the appellants would authorize such a finding. (2) William M. Stigall was wholly without any power whatever to execute the mortgage to Thomas L. King, and his act is void and of no effect. Price v. Courtney, 87 Mo. 387; Sampson v. Mitchell, 125 Mo. 217; Garland v. Smith, 164 Mo. 14; Roberts v. Best, 172 Mo. 67; Waldermeyer v. Loebig, 183 Mo. 372; Capen v. Garrison, 193 Mo. 335. (3) There is no such thing as an equitable lien in favor of a person who has voluntarily paid the debt of another. In fact subrogation is the only equitable lien which can arise upon the payment of one person of another's debt, and there can be no subrogation except where the person making the payment has an interest in the property and the payment becomes necessary. to protect his own interests. Capen v. Garrison, 193 Mo. 335; Waldermeyer v. Loebig, 183 Mo. 372; Garland v. Smith, 164 Mo. 14; Roberts v. Best, 172 Mo. 67; Cornwell v. Orton, 126 Mo. 355. In this connection we desire to call the court's attention to the fact that Thomas L. King did not pay off the Mintern mortgage, but that it was paid by Stigall with money borrowed from King on a void mortgage. As to the right of subrogation the following authorities are also directly in point. Sampson v. Mitchell, 125 Mo. 217; Klaeimann v. Geishelmann, 45 Mo. App. 497, 114 Mo. 437; Evans v. Halleck, 83 Mo. 376; Wooldridge v. Scott, 69 Mo. 669; Wade v. Beldmeir, 40 Mo. 486; Bunn v. Lindsay, 95 Mo. 250; Price v. Estill, 87 Mo. 381; Price v. Courtney, 87 Mo. 387. (4) The will conferred no authority on Stigall to execute a mortgage, or any other person for that matter. The judgment appointing him trustee

conferred no such power on him by its terms. Said judgment was void, as none of the interested parties were brought into court. Said judgment by its terms restricted the powers of the trustee and gave him only the power to rent the farm, pay taxes, insurance and repairs and apply balance of proceeds from rent to the purpose of the will. No mention of a mortgage or even of the payment of interest on a mortgage. Stigall had no power either to sell or mortgage.

BROWN, C.—On the first of June, 1888, John Berry, then the owner of the 117 acres of land in De-Kalb county, Missouri, involved in this proceeding, borrowed from William Q. Mintern $1100, due in five years, and to secure the payment thereof executed a deed of trust on said lands. He died in said county in January, 1891, leaving a wife and eight children, and having first executed his will containing the following three clauses, and constituted his wife and his eldest son, the plaintiff Thomas Berry, executors thereof.

"Sec. 1. To my beloved wife, Clarissa Berry, I give and bequeath all of my personal estate, with full power to sell and dispose of the same, for the purpose of paying all of the debts owing and contracted by me.

"Sec. 2. To my said wife I devise and bequeath full power and control of all lands and real estate of which I may die seized, until our youngest child shall become of legal age, and from the issues, rents and profits of said lands, to support and maintain and educate our minor children.

"Sec. 3. Upon our youngest child living becoming of legal age, I give and bequeath all the remainder of my estate, real, personal and mixed, in equal proportion, share and share alike, to the heirs of my body and hers, viz.: Thomas, Louisa, James, Maida, Killian, Charles, Carey and Carrie, and my said wife."

In June, 1893, the date of the maturity of the aforesaid note, Thomas Berry, then sole executor, his mother having previously died, paid $200 on the principal, and executed an extension agreement whereby the payment of the balance of said note, to-wit, $900, was extended for five years, making its maturity the first of June, 1898. On the first of June, 1894, the executor also paid $140 on the principal of said note. Thereafter the interest on said note was regularly paid until six months before its final maturity, to-wit, June 1, 1898, at which time it amounted to $782.80. On February 9, 1898, W. M. Stigall, who was the guardian and curator of the persons and estates of the four children of said John Berry who were still minors, together with Louisa Masoner, one of the adult heirs, filed in the DeKalb Circuit Court their petition for the appointment of some suitable person as trustee under the will to succeed Mrs. Berry, and Mr. Stigall was duly appointed. None of the other children were joined in that proceeding. The order of appointment contained a direction to said Stigall, as trustee, "to take charge of the aforesaid estate of John Berry, deceased, and rent the same to the best advantage; and after paying all taxes and insurance and paying for necessary repairs on said real estate, to apply the balance of proceeds from said rent to the purposes set out and mentioned in said will;" and required him to give a bond of $600. A few months after this appointment, the said note matured, and Stigall, the trustee, borrowed $782.80, being the amount then due on said note, from one Thomas L. King, who applied the same to the payment thereof and the cancellation of the said note and the deed of trust securing the same. He executed a note to the said Thomas L. King for the same amount, signed by him as trustee; and to secure the payment of this latter note, executed as such trustee, a mortgage on the said land of John Berry, deceased, which was duly recorded. The note was due one year

after date. On December 5, 1902, the payee of said note, nothing having been paid thereon, demanded a new note and mortgage for the amount then due, both of which were duly executed by the trustee, the new mortgage recorded, and the former note and mortgage cancelled. On February 5, 1904, the trustee filed a settlement, showing a balance of $124.95 of rents collected after taking credit for certain disbursements. He had been previously sued by the plaintiffs for an accounting and praying his removal as trustee. That suit on appeal went to the Kansas City Court of Appeals (Berry v. Stigall, 125 Mo. App. 264), where the judgment of the lower court confirming the settlement made by the trustee was affirmed. The present action was afterwards brought by all the children who survived John Berry, except one, who is represented by its assignee, and was against Thomas L. King, for the purpose of annulling and declaring void the last mortgage executed to him by the trustee, W. M. Stigall, as before recited. One of the children was still a minor and sued by his guardian. Thomas L. King since the institution of this suit died, and it is revived against W. M. Stigall and W. A. Wilson, his administrators. Upon a hearing in the circuit court there was a decree entered annulling and cancelling the mortgage described in the petition, from which the defendant executors have appealed to this court.

That equity seeks to prevent the unearned enrichment of one at the expense of another is the motive for an important part of its jurisprudence. [2 Pomeroy's Equitable Remedies, sec. 920.] This same idea is expressed in the maxim of the common law: *"Nemo debet locupletari ex alterius incommodo,"* and more fully in the maxim of the civil law: *"Jure naturae aequum est, neminem cum alterius detrimento et injuria fieri locupletiorem."* The principle is applied to aid those who have paid the debt of another under circumstances in which equity

**Equity: Paying Debt of Another.**

will imply a sufficient motive, whether such motive consists in the protection of an interest in the person invoking it, the performance of a duty pertaining to a fiduciary relation, or the invitation of the public, or of him whose debt is paid. While it does not extend its assistance to a mere volunteer who either foolishly or for charity's sake pays the debt of another, it relieves those whom the learned author already cited has divided into the three following classes: "First, those who act in performance of a legal duty, arising either by express agreement or by operation of law; second, those who act under the necessity of self-protection; third, those who act at the request of the debtor, directly or indirectly, or upon invitation of the public, and whose payments are favored by public policy." [*Ibid.*, sec. 921.] Judge Story in his work on Equity Jurisprudence (vol. 1 [13 Ed.], p. 645), characterizes this principle as a doctrine belonging to an age of enlightened policy and refined, although natural, justice.

In this case the defendants' intestate furnished the money to be used, and which was used, to pay off a mortgage on the farm of which the plaintiffs were the beneficial owners, one of them, Mr. Thomas Berry, being the executor of his father's will, through which they all derive their title. They now not only desire to keep the money but they claim that the gift was made in a bungling way, and ask the aid of this court to compel the representatives of the benefactor to put the finishing touches to it by cancelling the mortgage which he received as his security, believing it to be valid. The case presents itself in two questions: (1) Will the defendants be permitted to keep the money, and (2) if they keep it, will the court perfect their title by cancelling and removing the mortgage as a cloud upon it?

There is no intervening interest either legal or equitable to consider. The defendants seek reimbursement out of the same security which was released by

the payment of the debt, and which was available to the original creditor. He simply asks back the same fund which he advanced and which the debtor still holds intact. A majority of the present owners who are plaintiffs in this same case were then infants. It will not be claimed that their disability on that account protects them, for, had they themselves borrowed the money for the payment of the debt and made the mortgage, they could, upon becoming of age, have disaffirmed it only by returning the money which they received and had invested in the land, which would represent the fund for that purpose. [MacGreal v. Taylor, 167 U. S. 688.] It seems to me that, in equity, this case stands upon exactly the same foundations. Mr. Stigall was trustee under the will of Mr. John W. Berry for the minor heirs of the testator who were the only beneficial owners until the arrival at age of the youngest of them. Until that time he had the absolute control of the land subject to the duty to keep it and make it earn the best income he could for the benefit of the minors. The order of court appointing him the successor of the original trustee named in the will expressly required this. In doing it he had the right, as held in Berry v. Stigall, 125 Mo. App. 264, to borrow money for this purpose and to repay it, with interest, from the income of the land, which was entirely devoted by the will to their support, maintenance and education during their minority, and was then, and then only, to pass by the terms of the devise to these plaintiffs and their mother to whose rights they have succeeded by her death. He was also guardian of the persons and estates of the minors, although his power with reference to the land came from the appointment under the will. He took it subject to a mortgage made by the testator in his lifetime which would become due years before the expiration of the trust estate, and it cannot be denied that it was his duty, so far as he could, to preserve it from that mort-

gage, for the benefit of the trust. That he would do this was necessarily assumed by the testator, and the creation of the trust amounted to a direction to do that which was essential to its execution.

I do not understand it to be questioned that had Mr. Stigall been, in his own right, the owner of the same interest in these lands that he held as trustee for the minor heirs of Berry, he would have had the right to protect himself by paying off the incumbrance and charging the amount so advanced against the land. The plaintiff contends that however kindly equity might look upon the act, if done for himself, and from purely selfish motives, it has no regard for one who does the same thing in the performance of a duty toward others—that, although he would have acquired merit in equity by protecting himself, he became an intermeddler when he attempted to protect the children whose only means of sustenance and education had been placed by the law in his keeping. This naturally revolts the sense of right and justice out of which equity jurisprudence proceeds, and lends its remedies to the enforcement of trusts, and the protection of children and others under disability to care for themselves. It is natural that we should expect it to vindicate itself from the aspersion, and we are not disappointed.

It is immaterial in what form the equity in such cases is administered, or what name we adopt to describe it. In a case like the present, when no·intervening interest exists, its object is simply to recover compensation for the money advanced, out of the estate or property benefited. In cases where interests have intervened paramount at law to the debt of the person so paying an incumbrance, the latter will, under circumstances calling for such relief, be revived or considered in force in equity for his benefit, and he will be substituted or subrogated to its lien. The right, as we have seen, will not arise in favor of a mere volunteer or intermeddler, but it exists in all cases where

the payment is made at the invitation of the public, or is favored by public policy. It is upon this principle that purchasers at void judicial and quasi-judicial sales are protected, as in Valle v. Fleming, 29 Mo. 152. The same principle applies to void execution sales, the reason in all such cases being that public policy demands that such purchases should be encouraged by giving equitable relief to purchasers whose money has been honestly applied to the purposes to which the property has been devoted, although, on account of the insufficiency of the proceedings they have failed to obtain title. The same public policy protects those having charge of the interests of minors and persons of unsound mind in their efforts to protect their estate, and the courts have not been slow to recognize equities growing out of such transactions. A few instances of their practical treatment of this particular phase of the question will illustrate the principles applied by them in administering remedial equity in such cases.

In Coleman v. Frazer, 3 Bush (Ky.), 300, the wrongdoer in obtaining a note and mortgage from a person of unsound mind was the applicant for relief on the ground that a part of the money represented by the security had been applied by an attorney representing the lunatic in relieving his lands from certain proper charges and incumbrances. In holding that such relief should be given the court said: "If it is true, as the evidence conduces to prove, that the appellants, or one of them, furnished money which was used by an attorney, acting as such for Frazer, to relieve his estate of an incumbrance, such advancement was not only a sufficient consideration for an implied promise to repay the money advanced, but, by subrogation, at least, entitled the party making the advancement to a charge on the estate, upon the well-established principle that lunatics, like infants and married women, are chargeable as for necessaries, for

whatever may be furnished them which is reasonably necessary and beneficial to them.''

In Cutter v. Burroughs, 100 Me. 379, the guardian of a minor sold land which had been devised to another as trustee for the maintenance and education of the ward out of the rents and profits, and in case these were not sufficient out of the items of the estate in the order named. The trust failed by the death of the trustee, but the guardian proceeded to sell certain parcels of the land for the purposes of the trust. These sales were, of course, held to be without authority and void. A part of the purchase price, was, however, applied to the purposes of the trust, and on one of the lots valuable improvements were made by the purchaser. The suit was brought by the purchasers for the purpose of charging the amounts so expended upon the land. In granting the relief asked, the court, quoting from Valle v. Fleming, supra, said: "Nothing could be more unjust, we may repeat, than to permit a person to sell a tract of land and take the purchase money and then because the sale happens to be informal and void, to allow him, or, which is the same thing, his heir, to recover back the land and keep the money.''.

In Donohue v. Daniel, 58 Md. 595, a guardian executed a mortgage on the land of his wards to secure the payment of a loan for $1000, a large portion of which was expended for the payment of taxes, ground rents and other incumbrances due and owing upon the property at the time, and was borrowed for that purpose. It was held, at the suit of the lender, that he was entitled to be subrogated to the benefit of the liens which his money discharged. The Court of Appeals said: "Notwithstanding the mortgagor may not have been properly authorized to execute the mortgage so as to bind the remainder interests of his children and wards, yet if he did remove those incumbrances existing against his wards and their property in his

hands, he would have a just and legitimate claim. against them, and he would be entitled to the benefit of the lien which he raised." I see no ground for distinction between that case and this except that in this case Mr. Stigall, the borrower, in addition to his obligation as guardian to apply the property in his hands under the supervision and direction of the court to the support, maintenance and education of his wards, was charged by the terms of the will of Berry, independently of any action of the probate court, with the management of the lands, the collection of the rents and profits and their application for that purpose. Without violating the duty so imposed and as-

**Substituted Mortgagee.** sumed he could not permit this control to be taken from him by foreclosure and sale under the existing incumbrances. In preventing this he is entitled to the commendation of the court instead of its condemnation. Although, in his attempt to obtain the money, he exceeded the limit of his authority in attempting to mortgage the land, so that that act gave no other strength to the position of the lender than as an expression of the intention that he was to be substituted to the security of the incumbrance which his money was to discharge, yet the court will give effect to the transaction to the extent of making the substitution. While it does not come with good grace from any of these plaintiffs to ask a stranger to contribute the money used by the guardian to preserve their patrimony, such a claim comes with peculiarly bad grace from those who were of full age at the time, and stood by, giving the efforts of the guardian in their behalf the approval of their silence. This is especially true of the plaintiff Thomas Berry, the executor of the will, who had in his control whatever means there was, if any, to prevent the sacrifice of the land, and is now not only accepting the resultant estate as a gratuity, but is seeking the aid of the court to remove from the record the evidence of the gift.

We have been able to find but a single adjudicated case which tends to support the position of the plaintiffs. The case referred to is Capen v. Garrison, 193 Mo. 335, decided by this court in 1906. It does not go to the extent to which we are asked to go here, as no trust was involved other than the general duty of a guardian with respect to the estate of his ward. It does not, however, accord with the equitable doctrine applied by courts in such cases, and, in so far as it holds that the right to subrogation can only be founded in a purely selfish motive and cannot rest upon the attempted performance of a duty like that which results from the relation of the guardian to his ward, I do not think it should be followed.

For the reasons given I think that the judgment of the circuit court, which seems to have been founded upon the case last cited, should be reversed, and the cause remanded with directions to proceed to the entry of judgment in accordance with this opinion.

PER CURIAM IN BANC.—This cause coming into Banc and being reheard there the opinion of BROWN, Commissioner, is adopted as that of the court; the directions to the lower court being modified as indicated in the concurring opinion of *Woodson, J. Lamm, C. J., Woodson, Brown* and *Walker, JJ.*, concur—*Woodson, J.*, in a separate opinion in which *Lamm, C. J., Brown* and *Walker, JJ.*, concur, and *Brown, J.*, in a separate opinion. *Graves, Bond* and *Faris, JJ.*, dissent—*Bond, J.*, in a separate opinion in which *Graves* and *Faris, JJ.*, join. They also dissent to the concurring opinion of *Woodson, J.*

## CONCURRING OPINION.

WOODSON, J.—I concur in the opinion of our learned Commissioner, BROWN, not only for reasons so ably stated by him, but also for the following reasons:

If the English language has any meaning and if the law of Missouri has any application to wills and trusts created thereby, then the will of John Berry, deceased, created a trust in the lands described in the pleading in this case, in favor of his wife and children, to the effect that they should be supported, and the children educated out of the rents and profits thereof. This has not and cannot be seriously questioned.

**Subrogation: Trust Fund.**

Unfortunately, the testator died leaving an incumbrance upon the land and failed to appoint a trustee to administer the trust.

Under those conditions Thomas Berry, one of the plaintiffs, undertook to administer upon the estate of his father, and having no means with which to discharge the mortgage mentioned in the evidence, renewed the same for five years, and before it matured, made final settlement of his father's estate, leaving the mortgage unsatisfied.

Presently the mortgage became due, and payment was demanded, and there being no funds on hand with which to pay it, and the property being subject to sale in satisfaction thereof, and the trust thereby being placed in extreme jeopardy, the circuit court of the county in which the land was situated and the parties interested resided, under its ancient chancery powers, appointed the defendant Stigall, trustee, to administer the trust created under and by virtue of the will.

Among other things it became his duty to preserve the trust fund, the land in question, in the same manner as if it was his own, in order to carry into effect the trust created by the will; and the only possible way that could be done was to satisfy the mortgage, and prevent the threatened sale; and there being no money on hand with which he could pay off and satisfy the mortgage, it clearly became his duty to borrow money for that purpose, which he did, and satisfied the same therewith.

However, he should first have applied to the circuit court for an order authorizing him to borrow the money, pay off the old mortgage and execute a new one to secure the new loan.

Had he done neither, he would not have exercised ordinary care, which the law required of him, in the preservation of the trust fund placed in his hands; in which event the land would have been sold and the trust fund would thereby have been sacrificed to all, including plaintiff, which of course, would have rendered the trustee personally liable for a breach of trust.

The only complaint, in effect, counsel for plaintiffs makes, is, that the trustee, Stigall, did not procure an order of the court which had ample power to make it, authorizing him to borrow the money with which to lift the mortgage, and to execute another to secure the money so borrowed for that purpose.

Strictly speaking, that may have been true (but I am not here prepared to so state, for I have not investigated that question in regard to this class of instruments). Since, however, there is no claim made but what the trustee acted in the best of good faith, and that the money borrowed by him and secured by his deed of trust on the land went in payment of the original mortgage placed upon the land by the testator, no possible damage or harm was done to the plaintiffs; but upon the contrary, they were greatly benefited thereby, in that the trust fund was saved from destruction, worth about $6000, by the discharge of the mortgage which was for a sum about one-fifth the real value of the land.

For the reason stated, if there ever was a cause where the law of subrogation should apply, with all of its vigor, force and natural justice, this is that case, and a court of chancery and good conscience should,

without hesitation, lay her gentle hand of equity upon the situation and mete out natural justice to all.

Entertaining these views of the case, I am clearly of the opinion that the judgment is erroneous; and that the appellants, as representatives of the King estate, are entitled to be subrogated to all the rights and equities in and to the land in question, that the former mortgagees had therein, prior to the payment of their mortgage by Stigall, trustee.

The judgment should therefore be reversed and the cause remanded with directions to the circuit court to enter judgment for appellants according to the views herein expressed, and that the court foreclose the King mortgage in the manner provided for by law in such cases.

*Lamm, C. J., Brown* and *Walker, JJ.,* concur; *Graves, Bond* and *Faris, JJ.,* dissent.

## CONCURRING OPINION.

BROWN, J.—I cannot vote to affirm the judgment of the circuit court in this case, because, to my mind, it presents a shocking example of injustice.

Concretely stated the judgment and facts upon which it is based are as follows: King loaned his money in good faith to save the home of some needy neighbors, to-wit, several fatherless children. The money thus loaned saved the Berry home until her children (the plaintiffs) were grown and able to protect it. Then, after King himself was stricken down by the Grim Reaper, the plaintiffs whom he befriended while living have caused his administrators to be summoned to a place where even-handed justice is supposed to be administered, and there the loan declared void and King's estate mulcted with a bill of costs.

Precedents in Equity Cases.

I do not mean to speak unkindly of the learned jurist who rendered the judgment below. The able opinion of my Brother BOND demonstrates that said judgment is supported by the decisions of many appellate courts—perhaps it is sustained by what is known as the current of the authorities. A careful reading of those same "current of authorities" only demonstrates to my mind the fact that injustice has too often been permitted to occupy the seat of honor in the temple of justice, while courts of chancery, fettered and shackled by ill-considered precedents, have overridden their own consciences in order to travel in the footsteps of their predecessors. Why should a court of equity circumscribe its own powers and hedge itself about with so many technical rules that it must turn a deaf ear when justice cries out for relief against a self-evident wrong?

I have great respect for the learning of the fathers and their efforts to administer equity according to uniform rules. Uniformity is a thing much to be desired in the administration of both law and equity, but the arm of a court of equity should be long enough to right every wrong which it is called upon to redress, and for which the law affords no remedy.

The judgment *nisi* is so clearly for the wrong party that I would vote to reverse it though it were supported by every case adjudicated since the days of Justinian. If this deed of trust was brought forward as a link in a chain of title in an action at law it would, of course, be rejected, but the plaintiffs have called into action the extraordinary powers of a court of equity and should have meted out to them what a court of conscience finds they are entitled to—no more, and no less.

I approve the opinion of our learned Commissioner, except that it should be modified so as to specifically direct the trial court to enter judgment in favor of the defendants for the amount of the debt

due on the last deed of trust executed to King by Stigall as trustee.

## DISSENTING OPINION.

BOND, J.—Being unable to concur in the able opinion of the learned Commissioner in this case and deeming the questions involved to be of too much importance to justify a silent disapproval, I will state the facts and reasons which convince me that the judgment in this case should be affirmed.

John Berry owned 117 acres of land in DeKalb county, Missouri. He executed a deed of trust upon it on June 1, 1888, to secure a note to one William Q. Mintern for $1100, due in five years. He died in January, 1897, leaving a wife and eight children, after having made a will wherein he constituted his wife and eldest son joint executors thereof. By the first clause of his will he devised to his wife all his personal estate with power to sell same for the payment of all his debts. The second clause of his will is, to-wit: "To my said wife I devise and bequeath full power and control of all real estate with which I may die seized until our youngest child shall become of legal age, and from the issues, rents and profits of said land to support and maintain and educate our minor children." By the third clause of his will he gave all the remainder of his estate, real and personal, share and share alike, to his eight children and his wife. The note given by the testator in his lifetime, secured by deed of trust, matured in June, 1893, at which time his surviving executor made a payment of $200 on the principal of the debt and procured an extension of the remainder so that it should mature five years thereafter, to-wit, June, 1898. Between these dates the said executor paid $140 further on the principal of said note and all the interest accruing thereon until six months before its final maturity. On February 9, 1898, W. M. Stigall, the guardian and curator of four of the

minor children of the testator, joined Louise Masoner, one of the adult heirs, in a petition to the circuit court of DeKalb county for the appointment of some suitable person to succeed Mrs. Berry as trustee, under clause 2, supra, of the testator's will, and Mr. Stigall was duly appointed. None of the other children joined in that proceeding. The order of appointment directed said Stigall as trustee, to-wit, "To take charge of the aforesaid estate of John Berry, deceased, and rent the same to the best advantage; and after paying all the taxes and insurance and paying for necessary repairs on said real estate, to apply the balance of the proceeds from said rent for purposes set out and contained in said will." Under this appointment Stigall gave bond for $600. A few months thereafter, the note secured on the real estate matured, and Stigall borrowed $789.20 from one Thomas L. King, executing his note signed "W. M. Stigall, Trustee," therefor, and undertook to secure the same by a deed of trust upon the real estate of the testator signed by himself as trustee. The note so given and so attempted to be secured was due one year after date. With the proceeds of that note Stigall paid and discharged the note and mortgage given by the testator and caused the old mortgage to be cancelled of record and caused the one given by himself to the lender to be duly recorded. Upon the maturity of the note so given by Stigall, the lender (Thomas L. King) demanded a new note and a new mortgage for the amount then due, both of which were duly executed and recorded by Stigall as trustee; and the former note and mortgage given by him in that capacity were paid and cancelled. Thereafter Stigall was sued for an accounting as trustee and sought to be removed as such by the present plaintiffs. Stigall filed a settlement on February 5, 1904, showing a balance of $124.95 of rents collected by him after taking credit for certain disbursements. The circuit court confirmed this settlement, from which an

appeal was taken to the Kansas City Court of Appeals (Berry v. Stigall, 125 Mo. App. 264), where the judgment of the lower court was affirmed except as to an item of $4.50.

The present action was subsequently brought by the children of John Berry, one of them being a minor and suing by his guardian, for the purposes of annulling and declaring void the *last* mortgage or deed of trust executed upon the land of their father to Thomas L. King by W. M. Stigall, as before recited. Since the filing of this suit Thomas L. King has died and it is now revived against W. M. Stigall and W. A. Wilson, his administrators. To this action the administrators answered, setting up three defenses: (1) That said W. M. Stigall as trustee under the terms of his appointment by the circuit court, before quoted, "had the right and power, the premises conceded, to execute the aforesaid note and deed of trust to said King." (2) That should the court find that said note and deed of trust so executed to said King are void and of no effect, then the court will declare that the defendants as administrators of the said King have a lien on the land described in said deed of trust for the amount of $789.20. (3) That if the court should find that defendants have no lien on said land, then the court will adjudge and decree that they be "subrogated" to the rights of said William Q. Mintern, to whom a note and deed of trust had been executed by the testator, father of the plaintiffs, and that such deed of trust be declared in full force and effect for the use and benefit of the defendants.

Upon a hearing in the circuit court there was a decree entered annulling and cancelling the last mortgage or deed of trust given by Stigall as trustee to Thomas L. King. From that decree the defendants have appealed to this court.

## I.

We have carefully considered the brief filed by the learned counsel for plaintiffs, and we are unable to find either in its points or argument any effort to sustain the first defense set up in their answer in this case, to-wit, that the deed of trust by Stigall as trustee conveyed the title to the property therein described to Thomas L. King, other than a claim made that in some way he got such power and authority from the decision of the Kansas City Court of Appeals in the case wherein he was sued for an accounting. No question as to the right or power of Stigall to convey the title to the real estate of John W. Berry was involved in that case, nor was any such question alluded to in the decision of that court. [Berry v. Stigall, 125 Mo. App. 264.] The sole issue in that suit was whether or not Stigall as trustee of the rents and proceeds of the plaintiffs had made proper disbursement of the moneys so received by him and might use a portion thereof to pay a note which he had given to borrow money for repairing the estate. The Kansas City Court ruled that the terms of the will created a trust in the incomes of the estate in the wife of the testator during the minority of the children to which Stigall succeeded under appointment of the circuit court and authorized him to use the rents collected by him for the repair of the property and the prevention of its decay and dilapidation. In this the Kansas City Court of Appeals was supported by the language of the clause of the will and the objects of the managerial trust created therein and also by the terms of the order of the circuit court appointing Stigall as trustee after the death of the widow. There is not the remotest hint in the decision in that case that Stigall as such trustee had any power to convey or alien the *title* to the real estate of John W. Berry, in any mode or for any pur-

*Unauthorized Trustee's Deed.*

pose. The only trust created by clause 2 of the will of John W. Berry was the power and duty therein imposed upon his wife ''from the issues, rents and profits of said lands to support, maintain and educate our minor children'' until the youngest should be of age. Under the terms of that clause of the will Stigall as the successor in trust had not a trace of title or vestige of estate in the lands of the testator, and his deed of trust thereon for the purpose of securing the loan made to him by Thomas L. King had no other effect upon the title therein attempted to be conveyed than would a similar instrument executed by any other stranger to the estate.

The proposition that a man without any title to real estate can make no valid disposition of it against the owners is one so transparently self-evident that it does not seem to have been nakedly presented to the appellate courts. Hence, the only rulings of such tribunals illustrative of it are those made in cases where such grantor had some estate in the land or some power to convey it, and sought to exercise a broader right than that given. A case of this sort is Price v. Courtney, 87 Mo. 387. There, the devise to the trustee was of all the property, real and personal, of the testator in trust for his children with power in the trustee (Courtney) to sell the lands and to have all power, management and control which the testator would have had if alive. Assuming that this power gave him a right to incumber the land, the trustee executed a mortgage on a part of it and claimed to have used some of the money for the payment of taxes on other parts of the land. The heir brought a suit to annul the trust deed. After a thorough analysis of the law, this court held that the mortgage made by the trustee was void. [*Ibid.*, p. 395.] That ruling has been affirmed in the recent case of Dougherty v. Dougherty, 204 Mo. l. c. 234, and in many intervening decisions. It is conclusive of the invalidity of the trust deed in the case at

bar. For, if, as determined in that case, a trustee, holding an estate in the land with power to sell and manage the same as if the owner, could not as against his ward execute a mortgage thereon, for a much stronger reason the deed of trust executed by Stigall, who had no quality of estate in the land whatever and no authority to alien it in any form, is void.

It is only just to the learned counsel for appellants to state that they did not attempt by argument in their brief to sustain the first defense contained in their answer, averring the validity of the trust deed in any other way than upon the assumption (shown to be erroneous) that the decision of the Kansas City Court of Appeals empowered the trustee to execute it. The first defense in the answer cannot be sustained.

## II.

As the deed of trust executed by the trustee Stigall was a simple nullity so far as the title of the plaintiffs is concerned to the land described in said instrument, the only question left is the Subrogation: sufficiency of the second and third de-Equitable Lien. fenses set up in appellants' answer and quoted in the statement, to the effect that the administrators of Thomas L. King, the lender of the money to Stigall, are entitled as against the plaintiffs, the devisees of the land, to have it charged with a lien by subrogation or some other equity. First, as to subrogation. This doctrine having its root in the Roman law is adopted in equity jurisprudence and applied according to prescribed rules in this State and elsewhere. The parties entitled thereto are roughly divided by Mr. Pomeroy into three classes: (1) "Those who act in performance of a legal duty" arising by agreement or law. (2) "Those who act" for self-protection. (3) "Those who act at the request of the debtor, directly or indirectly, or upon invitation of

the public and whose payments are favored by public policy." [6 Pomeroy's Equity Jurisprudence, sec. 921 et seq.] The writer in the succeeding pages gives examples of cases falling within his several classifications. Under the first, the party seeking subrogation must be *legally* bound to pay the debt. If that is the case and he pays it, he is then entitled to be subrogated and have the benefits of all the rights and securities of the creditor whose claim he paid. Under this head all sureties whether joint debtors or otherwise may be subrogated. The author then states that the second head includes those who, though not legally bound, "yet might suffer loss if the obligation is not discharged;" and instances subsequent incumbrancers paying off prior incumbrances as being in this class. [6 Pomeroy's Eq. Jur., sec. 921, p. 1498.] As to the third class, the author cites payments made neither by compulsion nor for self-protection but by a "stranger to the obligation" at the request of some party liable for the debt, or purchasers at void judicial sales whose purchase money was applied to pay liens on the property. [Pomeroy, *Ibid.*, p. 1499.]

The law on the subject of subrogation is clearly and definitely fixed and the parties entitled thereto defined in the decisions of this State. [Capen v. Garrison, 193 Mo. 335; Kleimann v. Gieselmann, 114 Mo. 437; Kleimann v. Gieselmann, 45 Mo. App. 497; Valle v. Fleming, 29 Mo. 152, l. c. 166; Wooldridge v. Scott, 69 Mo. 669; Bunn v. Lindsay, 95 Mo. 250; Norton v. Highleyman, 88 Mo. 621; Price v. Courtney, 87 Mo. 387; Evans v. Halleck, 83 Mo. 376; Bissett v. Grantham, 67 Mo. App. 23; Lemmon v. Lincoln, 68 Mo. App. 76.]

In the case of Valle v. Fleming, supra, the administrator, proceeding under the statute to sell the land for the payment of debts, failed to give the proper notice. The purchaser at the sale bought in good faith. His money was used by the administrator to pay off

a mortgage to which the land was subject. The heirs of the intestate brought suit to recover the land. The defendants were representatives of the purchaser and set up that the $50,000 paid at the sale had been used to extinguish the prior mortgage, and asked to be subrogated thereto. The Supreme Court held, over the dissent of Judge SCOTT, that this might be done. This case has been again and again sustained on the ground that the administrator in that case had the *power* to sell the land through the probate court, and that the purchaser having bought in good faith at a sale where the public were invited to bid, was entitled to be subrogated to the mortgage extinguished by his money. Clearly, the status of the purchaser in that case was radically different from that of King in the case at bar. In the case at bar, Stigall had no *power* whatever to mortgage the land or in any way convey title thereto. He made no attempt to do so through the machinery of the court, and made no sale at which the public were invited to bid. The case, therefore, bears no relation to the one at bar, which was a private transaction wherein Stigall attempted to mortgage the property of the heirs of Berry in order to obtain money to pay off an existing mortgage, the rate of interest on which had been reduced to six per cent by the extension agreement. To do this he made an agreement with the said King whereby King would lend him money at seven per cent, provided the old mortgage was cancelled and a new mortgage should be made to King, which was done at a higher rate of interest. This mortgage to King was afterwards compounded and a second mortgage and note executed to him by Stigall for the amount, to bear interest at the rate of six per cent, which latter is the mortgage sought to be annulled in this action. In the case at bar, Stigall and King simply made a mistake of law, each doubtless thinking that the two mortgages executed by Stigall were within his authority as trustee under the appoint-

ment of the circuit court of DeKalb county and as successor to the trust created in the deceased widow concerning rents of the land.

The next case, Wooldridge v. Scott, 69 Mo. 669, a creditor of an estate satisfied a demand filed against it and gave his note for the balance of an amount necessary to discharge a vendor's lien for purchase money against the.land of the intestate upon the understanding that he should be subrogated to the vendor's lien. The creditor subsequently brought a suit in equity to be subrogated. The court held, "We are clear that plaintiff was not entitled to have a lien as vendor of the land, declared in his favor, either through subrogation or otherwise."

The next case is Price v. Courtney, 87 Mo. 387. In that case, as has been seen, the trustee, though endowed with ample power to sell the land and invested with title thereto by the terms of the will, had no power to mortgage it. He did so, however, and the mortgagee set up a right to subrogation on the theory that his money had been used by the trustee for the payment of taxes on some of the lands in his hands. The court held that the proof did not show this was the purpose of the mortgage, but added the following language: "But even had it been loaned for that specific purpose and applied in accordance therewith, such loaning and such application would have created no equity of subrogation or otherwise, in favor of him who loaned the money to remove the lien. This point was expressly so decided in Wooldridge v. Scott, 69 Mo. 669. It is true that was a case where the money was loaned in order to remove a vendor's lien, but this cannot alter the principle, which must underlie all similar transactions." [Price v. Courtney, 87 Mo. l. c. 395.] The case of Price v. Courtney is identical with the one at bar so far as the action of the trustee in making the mortgage is concerned. In that case, as in the one at bar, there was *no court proceeding* but the trustee acted

without any other authority than that given to him by the will, and undertook in excess of that authority to make a mortgage. In the case at bar, Stigall executed a mortgage without any authority of any court and concerning property in which he had no estate and no power to make a conveyance of any sort.

The next case is Norton v. Highleyman, 88 Mo. 621. The facts were that Highleyman owned a tract of land subject to a mortgage in favor of Pettis county. Default being made, the county directed the foreclosure of the mortgage. On the day of sale, Highleyman informed the sheriff he was willing to pay all the land was worth and more than the debt. Plaintiff, whose land joined that about to be sold, appeared at the sale to buy the same but was told that the sale would be postponed. He thereupon left, and the land was sold to Highleyman, who did not, however, pay his bid. Seven days afterwards the plaintiff appeared, and the county court being in session and being informed of the facts, ordered him to pay the sheriff the amount bid by Highleyman; and plaintiff "believing that by so doing he would succeed to the right of Highleyman under said bid and get a deed, paid the money and the mortgage was entered satisfied." Plaintiff subsequently brought suit, asking to be substituted to the rights of the county and that the mortgage of the county be enforced in his favor. Demurrer to his petition was sustained. The case was appealed. The Supreme Court held that the parties had made a mistake in a matter of law, and the plaintiff was not entitled to any relief, citing and approving Price v. Courtney, supra, and adding: "Before a third party, making payment of a debt secured by mortgage, can be subrogated to the rights of the mortgagee, he must show either that he made the payment at the request of the mortgagor, or to protect some interest he had of his own at the time of the payment." [Norton v. Highleyman, 88 Mo. l. c. 624.]

The next case is Bunn v. Lindsay, 95 Mo. 250. In
that case in speaking of the right of plaintiff to subro-
gation claimed, the court said:    "The facts proven
show that the plaintiff is not entitled to the subroga-
tion which he prays for, either as of right or by con-
vention. 'The demand of a creditor which is paid with
the money of a third person, without any agreement
that the security shall be assigned or kept on foot for
the benefit of such third person, is absolutely extin-
guished, but the doctrine of subrogation will be ap-
plied when the person claiming its benefit has been
compelled to pay the debt of a third person in order to
protect his own rights or to save his own property.' "
Citing cases and approving Price v. Courtney, supra.
[Bunn v. Lindsay, 95 Mo. l. c. 259.]

The next case is Kleimann v. Gieselmann. That
case originated in the St. Louis Court of Appeals and
was sent to this court and decided by Division Two.
The point in judgment was the right of one who ad-
vanced money to a debtor to pay off a deed of trust
on his land, to be subrogated thereto. Mrs. Werk
loaned $1600 to Mrs. Geiselmann to pay a debt owed
by her deceased husband, which was secured by deed
of trust on the property in controversy. The money
was applied to the extinguishment of the prior incum-
brance. The property was subject to homestead rights
in the children and passed by devise. The court held
that the transaction resulted from a mutual mistake
of law on the part of the two women, the lender think-
ing the widow had a right under the will to convey the
property, and the widow sharing the same view; and
added, "Granting that there was a mutual mistake be-
tween Mrs. Werk and Mrs. Gieselmann as to the inter-
est acquired by the latter to the property under the
will of her deceased husband and right to convey the
same, as she intended to do, it was merely a mistake
of law against which a court of equity will not grant
relief." [Kleimann v. Gieselmann, 114 Mo. l. c. 444,

445.]   It is impossible to distinguish that case from the one at bar.   Thomas L. King doubtless believed that Stigall as trustee had the right to execute a mortgage on the land in question, and Stigall doubtless took the same view.   Both of them were mistaken as to the power of Stigall under his appointment as trustee and under the will of John Berry.   Equity never relieves parties from the results of a mistake of law in the absence of circumstances amounting to fraud in bringing about the contract between them.   [Faust v. Birner, 30 Mo. 414; Kleimann v. Gieselmann, supra, l. c. 445.]

The next case is Capen v. Garrison, 193 Mo. 335. In that case the curator of certain minors executed a mortgage upon their property after petitioning the probate court for authority so to do for the purpose of paying off an existing incumbrance.   The court made the order as requested, and the money secured by the curator was applied to the payment of the pre-existing incumbrance (which was released and cancelled of record) and to the accumulated taxes.   The new deed of trust to the lender was duly recorded.   The prayer of the petition of the mortgagee was that his deed of trust be held to be a valid lien; that if that could not be done, then that the entry of satisfaction of the old deed of trust be set aside and he be subrogated to the rights of the creditor secured thereby; and if that could not be done, that he be entitled to have an equitable lien on the property and a foreclosure thereof.   The court in a careful opinion and after reviewing the law of this State and many of the cases cited above, was. forced to the conclusion that the lender of the money was not entitled to redress in either mode, and that the deed of trust executed to him by the curator was void; that the case in question was clearly distinguishable from the one of Valle v. Fleming, supra, in that the curator had no power to mortgage his ward's land in order to borrow money to discharge a pre-existing in-

cumbrance under the statutes of this State, whereas the administrator in the case of Valle v. Fleming, supra, did have the power to sell the land in controversy in that case for the payment of the debts of his intestate. Wherefore, it might well be held, that one of the public buying in good faith at his sale would be entitled to enforce against the owners of the land a lien for the amount of his purchase money, it having been applied to the extinguishment of a prior lien. In the case of Capen v. Garrison, supra, the court said: "The difference between that case and this is, that the administrator's sale was for a purpose for which the law authorized a sale and the only reason the sale was not valid was irregularities in the proceeding, whereas in this case the proceedings were in due form, but the purpose for which the probate court essayed to authorize the curator to execute the deed was not one for which the law authorized the curator to incumber his ward's land." [Capen v. Garrison, 193 Mo. l. c. 344.] The court then in reference to the claim for an equitable lien, used this language: "The doctrine of equitable lien follows closely on that of subrogation. They both come under the maxim 'equality is equity,' and they are applied only in cases where the law fails to give relief and justice would suffer without them. But the doctrine of equitable lien has its prescribed boundaries as well as that of subrogation; it is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor, any more than, as an illustrious law-writer said, to the measure of his foot. The right to an equitable lien arises when a party at the request of another advances him money to be applied and which is applied to the discharge of a legal obligation of that other, but when, owing to the disability of the person to whom the money is advanced, no valid contract is made for its payment. For example, if money is advanced to a minor to pay a debt which he has incurred for necessaries furnished

him, no action at law lies to recover of the minor on a contract express or implied for the repayment of the money loaned, yet as the money was loaned to discharge a debt for which the minor was liable at law and it was used for that purpose a court of equity will charge a lien on the minor's property to repay the sum advanced. [3 Pomeroy, Eq. Juris., sec. 1300.]   The doctrine of equitable lien is not limited to an advancement to a minor, but it is limited to cases where the same principle applies as is illustrated in the above supposed case.  In the case at bar, *there was no legal obligation on these minors to pay this debt, and therefore there was no foundation on which to build an equitable lien.  The doctrine of equitable lien applies no more in favor of a mere volunteer than does the doctrine of subrogation."*  (The italics are ours.) [Capen v. Garrison, 193 Mo. l. c. 349, 350.]   This case is absolutely determinative of the one at bar.  It is bottomed on an unbroken line of authorities in this State.  It has never been reversed or criticised but has been cited and approved, as is also the case of Kleimann v. Gieselmann, supra, by District Judge SANBORN in the case of Nichols v. Waukesha Canning Co., 195 Fed. l. c. 816 and 817.  In that case Judge SANBORN used the following language: "Kleimann v. Gieselmann, 114 Mo. 437, is a case quite similar in its general features to the one under consideration.  A mortgage was made to take up an earlier one.  The mortgaged property was the subject of a devise by will, and the new mortgage was made by the widow instead of the devisees, through a mistake of law in construing the will.  The money advanced by the mortgagee was used to pay the earlier mortgage, and upon the later one being held void the person who advanced the money sought to be subrogated to the security of the first mortgage.  It was held that equity could not relieve him, there being no circumstances of unfairness, fraud

or mistake of fact, simply a pure misapprehension of law. To the same effect is Capen v. Garrison, 193 Mo. 335.''

. It is also cited and approved by the same judge in the case of In re Lee, 182 Fed. l. c. 587 and 588.

It is impossible under the facts contained in this record and as shown by the testimony of Stigall (who was the only witness for the defendants) to afford the personal representatives of King any relief by subrogation or equitable lien against the land described in the last mortgage to him. Stigall, when permitted to testify over the objection of plaintiffs on the ground that King, the other party to the contract, was dead, stated in reference to securing the money: "Q. At whose request? A. At my request." There is no pretense in the brief of counsel nor an atom of evidence tending to show that King made this payment at the request of any other person than Stigall. He could not have made it at the request of Berry, for Berry had died before Stigall became trustee of the lands. He could not have made it at the request of the widow, for she had died before Stigall was appointed trustee. There is not a scintilla of testimony that he ever applied to any of the minors, who had become of age, for authority to borrow this money, nor would it have availed him if he had, because, as shown in the case of Capen v. Garrison, supra, and as is the law, the original deed of trust given by their father was not a debt against any of his children. Stigall did not even try to get the authority of the court to authorize his action in mortgaging the real estate of the plaintiffs. There was not a circumstance in the case which does not conclusively show that the transaction resulted solely from a simple mistake of law on the part of Stigall into which he and the mortgagee fell, in that they believed he had power to execute the mortgage in question. As demonstrative of that, the lender demanded that the original mortgage be can-

celled and delivered up and that a new one be made to him, which was done, and (as shown by his answer) at an increased rate of interest.

There is no possible legal viewpoint whereby this transaction growing out of a mistake of law on the part of Stigall and King can create any right of subrogation or equity as against the heirs, who are the plaintiffs in this action. As has been shown, the law governing the case at bar has been settled by at least ten cases in the appellate courts in this State and is in perfect accord with the great weight of authority by the text-writers, above quoted, and in the decisions of other tribunals. The learned Commissioner seemed to think that some authority for a contrary notion is afforded by the case of Donohue v. Daniel, 58 Md. l. c. 600. That case simply held that a curator who had removed some incumbrances existing against his wards and their property, would have a just and legitimate claim against them and would be entitled to the benefit of a lien which he raised ("more especially when he did so by an order of the Orphan's Court"). This latter feature is not noticed in the quotation from that case by the learned Commissioner. The case is therefore wholly distinguishable from the one at bar even if it were well reasoned or supported by authority, which is not conceded.

Nor is there any support for his view in the case of Cutter v. Burroughs, 100 Maine, l. c. 392. The doctrine there announced is simply that the law will not permit a person to sell a tract of land and take the purchase money and then because the sale is informal and void, allow him or his heirs to recover back the land and keep the money. At a mere glance it will be perceived that in the case at bar there was not a sale of the land by its owners—the children of John Berry—but a sale by a stranger to the title to a third party without the authority, consent or knowledge of the plaintiffs, upon his own initiative and occasioned

by a mistake on his part and that of the mortgagee as to his right in the premises. Clearly, if John Berry had sold this land and gotten the money, he could not afterwards, nor could his heirs in case of his death, set up the invalidity of the sale while retaining the purchase money. Nothing could be more foreign to the case at bar than this citation.

Neither is there any relevancy in the authority alluded to by the learned Commissioner in Coleman v. Frazer, 66 Ky. l. c. 309, 310. The court simply announced in that case that inasmuch as lunatics, like infants and married women, are chargeable as for necessaries, therefore a person of unsound mind to whose attorney money had been loaned to relieve his estate of an incumbrance, might recover the money upon an implied promise or by subrogation. The only ground of the decision is, as said, the liability of such persons for necessaries, to support which Parsons on Contracts is cited.

Under the statutes of this State no curator or minor can borrow money and pledge his land therefor except for education and maintenance. He is shorn of every other faculty of charging the real estate of his ward. [R. S. 1909, sec. 430; Capen v. Garrison, supra.]

The conclusion is, that the judgment of the trial court is correct and should be affirmed. The foregoing opinion is refiled as my dissent and that of *Graves* and *Faris, JJ.,* to the opinion adopted in Banc in this case.